# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CHRIS PARKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:14-cv-00959 |
| v. ) | |
| ) | Judge Sharp |
| METROPOLITAN GOVERNMENT ) | Magistrate Judge Brown |
| OF NASHVILLE AND DAVIDSON ) | |
| COUNTY, TENNESSEE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant Metropolitan Government of Nashville and Davidson County's Motion for Summary Judgment (Docket No. 43), to which Plaintiff has responded in opposition (Docket No. 49) and Defendant has replied (Docket No. 51). For the reasons set forth below, Defendant's motion will be granted and this case dismissed.

## I. Factual & Procedural Background

Unless stated otherwise, the following facts are drawn from Defendant's Statement of Undisputed Material Facts and Plaintiff's Response thereto. (Docket Nos. 45, 50). Plaintiff Chris Parker began working for Defendant in the Davidson County Sheriff's Office ("DCSO") as a correctional officer in 2007. DCSO promoted Plaintiff to Corporal in March 2011. In that role Plaintiff's duties included monitoring inmates; apprehending and restraining inmates as needed; searching inmates, cells, and visitors; preparing incident reports; and providing security when inmates traveled to other destinations.

Plaintiff was involved in two separate inmate altercations in 2011. First, in May 2011, an inmate assaulted Parker, striking him on the face with handcuffs. (Docket No. 44 at 3). Plaintiff

1

requested and received leave under the Family Medical Leave Act ("FMLA") for high blood pressure shortly thereafter and remained on leave from July 3, 2011 to August 14, 2011. Id. The next altercation occurred on September 25, 2011, when an inmate again struck him in the head. Id. Plaintiff reported injuries to his face, wrist, elbow, and knee. Id. Despite these injuries, Plaintiff returned to work as usual on September 26, 2011. Id. In February 2012, DCSO Chief of Security, Jaime Johnson, spoke with Plaintiff and developed some concerns about Plaintiff's fitness for duty, namely, Plaintiff's psychological stability. (Docket No. 43-10). Johnson then referred Plaintiff for a psychological fitness for duty evaluation. (Docket No. 43-11). Two doctors evaluated Plaintiff and found him unfit for duty until at least May 1, 2012 and a third doctor, Plaintiff's treating psychologist, agreed. According to his doctors, Plaintiff suffers from Post-Traumatic Stress Disorder ("PTSD"). (Docket No. 44 at 4-5). Based on the above diagnosis and evaluations, Plaintiff again went out on FMLA leave.

By May 1, 2012, Plaintiff had exhausted all 12 weeks of the leave available to him under the FMLA. However, the evaluating doctors still deemed him unfit for duty. DCSO reacted by improperly terminating Plaintiff without providing him with due process on May 7, 2012. Recognizing its mistake, DCSO rescinded the termination on May 30, 2012, reinstated Plaintiff, and paid him the salary due to him during the period of termination. Even after his reinstatement, Plaintiff remained unfit for duty and, by then, had exhausted his FMLA leave. With the encouragement of DCSO, Plaintiff applied for and received a disability pension starting in October 2012. An employee who receives a disability pension has not been terminated as an employee but rather has been administratively moved to the Benefit Board. Continuing through June of 2015, Plaintiff's doctors represented that Plaintiff could not work return to work for DSCO as a corporal. Plaintiff's filings also indicate that he remained on the Benefit Board

payroll as recently as May 2015, when a representative of Defendant was working to find him another suitable position. (Docket No. 49-3). Plaintiff does not allege that he or his doctors sought and were denied an accommodation.

Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and subsequently initiated the instant litigation. He alleges that the May 2012 termination—which was later rescinded—and his voluntary switch to the Benefit Board constitute unlawful discriminatory terminations. Defendant opposes the characterization of these events as terminations and argues that Plaintiff cannot prove a prima facie case of disability discrimination. The Court agrees with Defendant.

## II. Legal Analysis

A. The Summary Judgement Standard

The standards governing summary judgment are well known. A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox Cnty., Sch. Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B. Plaintiff's Claims Under the ADA

Plaintiff alleges that he was terminated in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). (Docket No. 1 at ¶ 34). An employee may prove

discrimination based on disability in violation of the ADA in two ways. The first method of proof requires the employee to put forward direct evidence that the defendant had a discriminatory motive in carrying out its employment decision. Smith v. Chrysler Corp., 155 F.3d 799, 805 (6th Cir. 1998) (citation omitted). Direct evidence might "take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'" Id. Under the direct evidence model, "if the fact-finder accepts the employee's version of the facts, no inference is necessary to conclude that the employee has proven this form of discrimination." Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 868 (6th Cir. 2007) (citing Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999)).

Courts recognize that direct evidence of a discriminatory animus is rare. Employees may also, therefore, prove discrimination through the indirect burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). See Burress v. City of Franklin, Tenn., 809 F. Supp. 2d 795, 810 (M.D. Tenn. 2011). To make out a prima facie case of employment discrimination through indirect evidence under [the ADA], a plaintiff must show that 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." Whitfield v. Tennessee, 639 F.3d 253, 258-59 (6th Cir. 2011) (resolving "confusion in this circuit" over the proper elements of an ADA employment discrimination claim).[1]

---

[1] Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment includes language and arguments typically found in a failure to accommodate claim under the ADA. However, Plaintiff did not plead such a claim and has not identified a single accommodation sought—whether explicitly or implicitly—that would provide the foothold for such a claim. Accordingly, the Court has treated Plaintiff's claim like a general disability discrimination claim.

Plaintiff repeatedly asserts that he is proving disability-based discrimination using direct evidence. (Docket No. 49 at 6-8). Despite these statements, Plaintiff presents absolutely no direct evidence of discrimination and instead seems to apply the indirect evidence analysis. Yet Plaintiff also fails the indirect evidence analysis because he has shown neither that he is otherwise qualified for the position, nor that he actually suffered an adverse employment action. Thus, regardless of which method of proof Plaintiff attempts to use, his claims under the ADA fail.

Because Plaintiff simply has not put forth any direct evidence of discrimination, the Court will not dwell on that method of proof. Turning to the indirect evidence analysis, the Court finds that Plaintiff was not otherwise qualified for the position. "In order to show that a plaintiff is qualified, she must prove that she was performing her job at a level which met her employer's legitimate expectations." Newcomb v. Allergy & ENT Associates of Middle Tenn., P.C., No. 3:10-cv-1230, 2013 WL 1874257, at *10 (M.D. Tenn. May 3, 2013) (internal quotation marks and citations omitted), amended in part, No. 3:10-cv-1230, 2013 WL 3976627 (M.D. Tenn. Aug. 2, 2013). Plaintiff has admitted that his doctors stated in May 2012 that "there are no reasonable accommodations that would help [Plaintiff] perform differently on the job and remain on duty as a corrections officer at this time." (Docket No. 43-21 at 2). Plaintiff also admitted that his doctors repeatedly found him unfit for duty, including as recently as June of 2015. (Docket No. 50 at ¶ 13). Indeed, Plaintiff himself has continued to confirm his lack of fitness well into this litigation. (Docket No. 49-3) (May 25, 2015 email to Plaintiff's counsel noting that "it is Mr. Parker's opinion that he cannot return to work at DCSO in the three positions offered to him."). Plaintiff has not been able to complete his job duties, with or without accommodation,

since early 2012. Accordingly, Plaintiff is not qualified for the position of Corporal at DCSO within the meaning of the ADA.

Even if Plaintiff were somehow qualified, which he is not, there has not been an adverse employment action. Defendant rescinded Plaintiff's May 2012 termination and provided him with full recompense for the three-week period between his termination and reinstatement. The Sixth Circuit has stated unequivocally "that when an employer imposes an employment action that would be an adverse employment action but then quickly reverses the action, the employee has not suffered an adverse employment action." Keeton v. Flying J, Inc., 429 F.3d 259, 263 (6th Cir. 2005) (citing Birch v. Cuyahoga Cnty. Probate Ct., 392 F.3d 151 (6th Cir. 2004) and Bowman v. Shawnee State Univ., 220 F.3d 456 (6th Cir. 2000)). Thus, the first termination did not constitute an adverse employment action. Neither can Plaintiff construe his own decision to apply for a disability pension as a termination. Plaintiff has admitted that a person "on a disability pension is not terminated as an employee of the Metropolitan Government" but rather "is administratively moved from the department to the benefit board." (Docket No. 50 at ¶¶ 16-17). Defendant did not terminate Plaintiff's employment by encouraging him to seek a disability pension. Plaintiff does not identify any other alleged adverse employment actions.[2]

Because Plaintiff was not qualified for the job and because he did not suffer any adverse employment actions, he cannot establish a prima facie case under the ADA.

C.  Plaintiff's Claims Under the FMLA

Plaintiff also claims that he has been discriminated and retaliated against for exercising his rights under the Family Medical Leave Act, 29 U.S.C. § 2611 *et seq.* ("FMLA"). The FMLA

---

[2] To the contrary, the record reveals Defendant's efforts to place Plaintiff in a suitable position, further belying Plaintiff's claims of an adverse employment action, (Docket No. 49-3) (May 25, 2015 email confirming that Defendant offered Plaintiff three positions that "fit the job restrictions for Mr. Parker as identified by the Metro Civil Service Medical Examiner." ).

entitles eligible employees up to twelve weeks of leave for any of a number of reasons, including a "serious health condition that makes the employee unable to perform the functions of the position of such employee." Easter v. Asurion Ins. Servs., Inc., 96 F. Supp. 3d 789, 795 (M.D. Tenn. 2015) (citing 29 U.S.C. § 2612(a)(1)(D)). Under the FMLA, "[a]n employer is prohibited from discriminating against employees . . . who have used FMLA leave." 29 C.F.R. § 825.220(c). The FMLA also prohibits employers from using "the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c). Thus, employees may bring claims of retaliation under the FMLA.

As with claims under the ADA, where a plaintiff presents no direct evidence of discrimination or retaliation, FMLA retaliation claims are analyzed under the McDonnell Douglas burden-shifting framework. See Edgar v. JAC Products, Inc., 443 F.3d 501, 508 (6th Cir. 2006). A Plaintiff may establish a prima facie case "showing that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." Bryson v. Regis Corp., 498 F.3d 561, 570 (6th Cir. 2007). Once again, Plaintiff's claims are thwarted by the absence of an adverse employment action. Defendant twice supported Plaintiff's decision to take FMLA leave. Although Defendant improperly terminated Plaintiff when his FMLA leave had expired and Plaintiff remained unfit for duty, Defendant swiftly worked to remedy this error, thus precluding it from counting as an adverse employment action. After this correction, Defendant suggested another mechanism for him to remain an employee while taking the time he needed to recover. Absent an adverse employment action, Plaintiff's FMLA retaliation claim necessarily fails.

### III. Conclusion

Plaintiff has not shown a genuine dispute of material facts. Moreover, based on the facts now on the record, Plaintiff cannot make out a prima facie case of discrimination or retaliation under either the ADA or the FMLA. Defendant is therefore entitled to summary judgment on all claims. An appropriate order shall enter.

It is SO ORDERED.

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE